**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DASHAUN MCCRAY,

    Plaintiff - Appellant,

v.

DOUGLAS A. COLLINS, in his capacity
as Secretary of the Department of Veterans
Affairs,

    Defendant - Appellee.

No. 24-3159
(D.C. No. 2:22-CV-02154-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **ROSSMAN**, **MURPHY**, and **FEDERICO**, Circuit Judges.
_____

## I.    INTRODUCTION

The plaintiff-appellant, DaShaun McCray, filed suit against the Secretary of

the Department of Veterans Affairs ("the Secretary"),[1] raising claims of employment

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] In the district court, McCray named as the defendant, the Secretary of the Department of Veterans Affairs in his official capacity. When the complaint was filed in the district court, Denis McDonough was serving as the Secretary of the Department of Veterans Affairs. In February 2025, however, Doug Collins was sworn into that office, thereby succeeding McDonough. Secretary Collins is, therefore, automatically substituted as the defendant-appellee in this matter. Fed. R. App. P. 43(c)(2).

discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq.* All of McCray's claims were resolved in the Secretary's favor at either the motion to dismiss stage or the summary judgment stage. McCray appeals the judgment of the district court, challenging the disposition of all but one of her claims.[2]

McCray has only preserved for appellate review her claims of disparate treatment and retaliation. *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005) ("[A] party who fails to make timely objection to the magistrate judge's findings and recommendations waives appellate review . . . ."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (declining to consider arguments that are "inadequately presented"). As to the former, the record is devoid of objective evidence McCray was subject to disparate treatment due to her race. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1220 (10th Cir. 2022); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) ("[S]ubjective belief of discrimination is not sufficient to preclude summary judgment."). As to the latter, McCray fails to present evidence from which a reasonable jury could find that the person who took purportedly adverse employment actions knew of any protected activity. *Lindsay v. Denver Pub. Schs.*, 88 F.4th 1323, 1327 (10th Cir. 2023).

---

[2] McCray raised a constructive discharge claim in the district court, which was dismissed upon the Secretary's motion. She does not identify that claim as a basis for appeal, nor does she present any arguments challenging its dismissal.

Therefore, exercising jurisdiction pursuant to 28 U.S.C. § 1291, the court **affirms** the judgment of the district court.

## II.    BACKGROUND

In December 2015, McCray, an African American woman,[3] began working at the Robert J. Dole VA Medical and Regional Office Center in Wichita, Kansas, ("Wichita VA") as a staff nurse. During her time at the Wichita VA, McCray was promoted on multiple occasions, eventually obtaining the position of Nurse Manager. As Nurse Manager, McCray reported to Ruth Duda, her direct supervisor.

On January 24, 2020, McCray met with Duda's supervisor, Dr. Robert V. Cummings, to discuss Duda's workplace conduct ("January 24 meeting").[4] McCray expressed frustration with Duda's managerial style, particularly as it affected her own workload and responsibilities. One week later, McCray initiated contact with a counselor from the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to File Formal Complaint. Pursuant to the notice, she filed a formal complaint of employment discrimination with the EEOC office for the

---

[3] During her deposition, McCray clarified she prefers to be identified as African American.

[4] Also attending this meeting was McCray's colleague Elizabeth Dial. Dial, another African American woman, sought to raise similar concerns about Duda's workplace conduct.

Department of Veterans Affairs on March 30, 2020.[5] The agency accepted the

following eight incidents for investigation:

- Beginning in April 2018, Duda attempted to intimidate McCray by yelling at her in shared areas of the workplace.

- From January 2019 until January 2020, Duda neglected to provide adequate training.

- In January 2019, Duda undercut McCray's supervisory authority by giving instructions to McCray's subordinates which were at odds with McCray's own instructions.

- On January 24, 2020, following McCray's meeting with Cummings, Duda increased McCray's workload as an act of retaliation.

- On January 30, 2020, Duda refused to allow McCray to speak during a meeting with the Medical Center Director.

- On January 31, 2020, Duda violated McCray's personal space and yelled at her following a meeting with executive staff.

- In February 2020, Duda undermined McCray's supervisory authority by accusing her of taking credit for the work of another colleague.

- On March 2, 2020, Duda threatened to fire McCray when McCray asked Duda about a coworker's expiring nursing license.

In its final agency decision, the EEOC concluded McCray failed to prove her

claims. She was notified of her right to appeal the decision or, alternatively, file a

civil complaint in a district court.

---

[5] A few weeks after filing her formal complaint, McCray transferred to a VA facility in Aurora, Colorado.

Opting for the latter, McCray filed suit in the District of Kansas against the Secretary in his official capacity. Based on the eight incidents reported to the EEOC, McCray's complaint set out four claims under Title VII: 1) race-based disparate treatment; 2) racially hostile work environment; 3) retaliation; and 4) constructive discharge. *See* 42 U.S.C. § 2000e *et seq.*

Upon the Secretary's motion, the district court dismissed the racially hostile work environment claim and the constructive discharge claim. The district court reasoned that, because McCray failed to allege sufficient facts to establish an inference of racial animus, she failed to state a racially hostile work environment claim. Separately, the district court ruled McCray could not pursue her constructive discharge claim because she failed to administratively exhaust her remedies.

Summary judgment was granted to the Secretary on McCray's remaining claims. On her disparate treatment claim, the district court ruled, as one possible basis to grant summary judgment, that McCray failed to establish an inference of racial animus as to any of her preserved claims. In disposing of her retaliation claim, the district court determined McCray failed to proffer, among other things, evidence of a causal connection between the protected activity and adverse employment action. In addition, the district court refused to entertain McCray's belated efforts to raise a claim of retaliatory harassment. McCray timely appealed.

## III.    DISCUSSION

McCray challenges the dismissal of certain claims, as well as the grant of summary judgment on certain other claims. The district court's order granting a

5

motion to dismiss is reviewed de novo. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). "To defeat a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face." *Id.*

This court reviews the grant of summary judgment de novo as well, applying "the same legal standard used by the district court." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). "A district court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quotation omitted). Although the factual record is reviewed "in the light most favorable to the non-moving party," "unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Est. of Hurtado ex rel. Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024). "Furthermore, where the nonmovant bears the burden at trial on an essential element of a claim, the nonmovant must go beyond the pleadings and designate specific facts" pertaining to each element to survive summary judgment. *Id.* (quotation omitted).

### A. Waiver of Appellate Review

McCray argues the district court erred in refusing to consider her retaliatory harassment claim. She relies on case law from the District of Kansas to assert that retaliatory harassment is a theory of retaliation which may be pleaded as a distinct cause of action. She claims to have pleaded retaliatory harassment and, in support of this position, refers to various allegations included in the complaint.

Regardless of the substantive merits of her position,[6] "[t]his court has adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez*, 418 F.3d at 1119. In the pretrial order, the magistrate judge ruled that McCray failed to raise a retaliatory harassment claim. Supp. App. Vol. I at 141 n.2. In its summary judgment order, the district court observed McCray did not object to, or seek review of, the pretrial order. Supp. App. Vol. VII at 1737. Absent from the record is an objection to either the magistrate judge's determination or the district court's assessment of the pretrial order. By failing to timely object to the determinations by the magistrate judge, McCray has waived appellate review of the retaliatory harassment claim. *See Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008).

McCray points to her opposition to the summary judgment motion, suggesting the arguments raised therein ought to be treated as objections to the pretrial order. This court, however, has only identified two exceptions to the firm waiver rule: 1) if a pro se litigant has not been informed of the time period for objecting and the consequences of failing to object; or 2) when "the interests of justice so dictate." *Johnson v. Reyna*, 57 F.4th 769, 778 (10th Cir. 2023) (quotation omitted). McCray's

---

[6] McCray fails to identify binding case law which recognizes retaliatory harassment as a cause of action separate from retaliation. The court expresses no opinion on the matter.

argument invokes neither of these exceptions and does not otherwise justify consideration of her retaliatory harassment claim on appeal.

McCray also asserts the district court erred by dismissing her racially hostile work environment claim. Aside from conclusory statements suggesting the adequacy of her pleadings, however, she fails to specify the grounds for her appeal. Federal Rule of Appellate Procedure 28(a)(8)(A) requires the appealing party to identify "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Accordingly, this court has routinely "declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson*, 500 F.3d at 1104. Because she fails to advance "reasoned argument as to the grounds for appeal," McCray's racially hostile workplace claim is not adequately briefed and will not be considered on appeal. *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995).

## B. Title VII Claims

McCray also challenges the grant of summary judgment against her claims of employment discrimination and retaliation, both brought under Title VII. *See* 42 U.S.C. § 2000e *et seq.*

### 1. Administrative Exhaustion

"A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (quotation omitted). Thus, the "plaintiff's claim in court is generally limited by

the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotation omitted). McCray reported eight separate incidents in her formal complaint to the EEOC. Due to relevant administrative exhaustion requirements, however, not all eight incidents may form the basis of her discrimination and retaliation claims.

First, an aggrieved person must initiate contact with an EEOC counselor within 45 days of the matter alleged to be unlawful.[7] 29 C.F.R. § 1614.105(a)(1); *see Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) ("Federal employees alleging discrimination or retaliation prohibited by Title VII . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies."). As set out in the pretrial order, McCray first initiated contact with an EEOC counselor on January 31, 2020. The court therefore will not consider claims based on incidents which occurred more than 45 days prior to that initial contact—or, events which occurred prior to December 17, 2019. Acts and incidents prior to December 17, 2019, may only be considered as "background evidence in support of a timely claim." *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (quotation omitted).

---

[7] This timeliness requirement is not a jurisdictional rule, but rather "a claims-processing rule that the employer may raise as an affirmative defense." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). Secretary Collins raised this affirmative defense in the district court and also raises it on appeal. *See id.* ("Because it is a mandatory rule, . . . the court must enforce this exhaustion requirement if the employer properly raises it.").

Second, because "each discrete incident of discriminatory or retaliatory treatment constitutes its own unlawful employment practice," *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quotations and alteration omitted), plaintiffs alleging multiple instances of discrimination or retaliation must separately exhaust each act. *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). McCray seeks to bypass this requirement by urging this court to consider her allegations of continuing discrimination and retaliation.[8] She observes—though without any supporting citations—this court is in the minority in refusing to apply the continuing violation doctrine to her disparate treatment claim. *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018) ("[A] claim for disparate treatment is based on a discrete act."). Absent en banc consideration or an intervening Supreme Court decision, however, the court "cannot overturn the decision of another panel of this court." *United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014) (quotation omitted).

In sum, only discrete employment actions that were raised within 45-days of the initial EEOC counseling are considered properly exhausted. This requirement implicates three of the eight incidents reported to the EEOC. To start, McCray's first claim that, beginning in April 2018, Duda attempted to intimidate her by yelling at

---

[8] "Under [the continuing violation doctrine], a plaintiff may recover for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a continuing pattern of discrimination." *Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1139 (10th Cir. 2003) (quotations omitted).

her in shared areas of the workplace has not satisfied exhaustion requirements because McCray fails to identify a discrete instance of Duda yelling at her occurring after December 17, 2019. Second, McCray's claim that, from January 2019 until January 2020, Duda neglected to provide adequate training, must be narrowed temporally. Only Duda's alleged failure to train McCray from December 17, 2019, until January 2020 has been properly exhausted.[9] Finally, McCray's claim that, in January 2019, Duda undercut McCray's supervisory authority by giving instructions to McCray's subordinates which were at odds with McCray's own instructions is not exhausted; McCray fails to identify a discrete instance after December 17, 2019, in which Duda so undermined McCray's supervisory authority. The remaining five employment acts have been properly exhausted and may form the basis of her discrimination and retaliation claim.[10]

---

[9] An employer's failure to train is considered a discrete act. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 634 (10th Cir. 2012) ("[The plaintiff] alleges she was denied training . . . in 2004 or 2005. This was a discrete act, and she should have filed a claim challenging this . . . ."), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346, 355-56 (2024).

[10] To summarize, McCray has exhausted the following claims:

- From December 17, 2019, until January 2020, Duda neglected to provide adequate training.

- On January 24, 2020, following McCray's meeting with Cummings, Duda increased McCray's workload as an act of retaliation.

- On January 30, 2020, Duda refused to allow McCray to speak during a meeting with the Medical Center Director.

11

### 2. *Employment Discrimination Claim*

McCray maintains she was subject to disparate treatment based on her race. Title VII prohibits employers from, among other things, discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To survive summary judgment on a Title VII claim of discrimination . . . a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

"Under the *McDonnell Douglas* framework, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Id.* (quotation omitted). In general, to proceed on a Title VII discrimination claim based on indirect evidence, a plaintiff must demonstrate the following elements as part of her prima facie case: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, and

---

- On January 31, 2020, Duda violated McCray's personal space and yelled at her following a meeting with executive staff.

- In February 2020, Duda undermined McCray's supervisory authority by accusing her of taking credit for the work of another colleague.

- On March 2, 2020, Duda threatened to fire McCray when McCray asked Duda about a coworker's expiring nursing license.

(3) the challenged action occurred under circumstances giving rise to an inference of discrimination." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024) (quotations omitted). McCray does not suggest her claim must be reviewed under a different prima facie standard.

The district court, based on a thorough analysis, determined McCray failed to establish an inference of discrimination as to any of her exhausted claims. McCray challenges this determination on appeal, arguing she and certain other African-American colleagues were treated differently than similarly situated white colleagues.

None of the exhausted employment actions constitutes direct evidence of discrimination. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) ("Direct evidence demonstrates on its face that the [employment action] was discriminatory."); *cf. Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("[I]f the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence."). McCray's claim of disparate treatment is therefore subject to the *McDonnell Douglas* framework, under which she must proffer, among other things, evidence which gives "rise to an inference of discrimination." *McNellis*, 116 F.4th at 1139.

As to each claim, McCray primarily seeks to establish an inference of discriminatory intent by comparing her treatment with that of other similarly situated white employees. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir.

2005) (holding that an inference of discrimination may be established through "proof that the employer treated similarly situated employees more favorably"). Under her theory of the case, McCray must present specific "objective evidence" to establish she was subject to disparate treatment due to her race. *See Ford*, 45 F.4th at 1220; *see also Aramburu*, 112 F.3d at 1408 n.7 ("[S]ubjective belief of discrimination is not sufficient to preclude summary judgment.").

McCray offers only a series of unsubstantiated assertions in an attempt to satisfy this requirement. For example, McCray claims Duda unfairly treated African-American employees by assigning heavier workloads and requiring McCray to treat other African-American employees more harshly. McCray also suggests there was another instance in which Duda allegedly spoke unfavorably about McCray to others in the workplace. McCray adds that Duda undermined the authority of African-American employees with supervisory responsibilities.

As an initial matter, McCray fails to connect these arguments to the record. Some of these arguments lack citations altogether. Other assertions are accompanied by record citations, but those citations do not contain evidence that supports the proposition she seeks to advance. Instead, the proffered citations refer back to parts of district court filings which, like her appellate brief, contain only a recitation of these conclusory allegations. In some instances, McCray refers to documents which are not part of the appellate record at all. These unsubstantiated arguments do not create a genuine issue of fact. *See Bronson*, 500 F.3d at 1104 ("An appellant's opening brief must identify appellant's contentions and the reasons for them, with

14

citations to the authorities and parts of the record on which the appellant relies."
(quotation omitted)); *see also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir.
2004) ("[U]nsupported conclusory allegations . . . do not create a genuine issue of
fact.").

Even looking past these deficiencies, a review of the record on appeal reveals
no evidence sufficient to withstand summary judgment. Despite pursuing a theory of
disparate treatment, McCray fails to identify any similarly situated, non-African-
American employees. Instead, her deposition statements confirm that there were no
similarly situated white employees. *See Sorbo*, 432 F.3d at 1173-74 (explaining that,
although a "similarly-situated person" is but one sufficient means to establish an
inference of discrimination, if "comparison to others similarly situated is the method
chosen by the plaintiff to raise an inference of discrimination, the claim is properly
analyzed in those terms" (quotation omitted)). Without some objective evidence by
which to compare or analyze McCray's experience, it cannot be determined whether
she was disparately treated, let alone whether the disparity could have been
motivated by racial animus. *See Ford*, 45 F.4th at 1220 (affirming summary judgment
against a discrimination claim "devoid of any specific instances of disparate
treatment"); *Aramburu*, 112 F.3d at 1408 n.7.

McCray adds one more line of argument. She claims, albeit without any
citations to the record, that Duda—at some point after McCray left the Wichita VA—
was demoted because of how she handled a matter concerning a racial slur.
According to McCray, this incident serves as evidence Duda harbored racial animus.

15

Even if this assertion was accepted at face value, Duda's handling of that matter was not "tied to the alleged adverse employment action" and, therefore, cannot be considered as relevant evidence. *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1289 (10th Cir. 2000); *see Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) ("[A]necdotal evidence of discrimination should only be admitted if the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand." (quotation omitted)). McCray therefore fails to produce relevant or objective evidence to create a genuine issue concerning Duda's purportedly discriminatory intent. *See Branson v. Price River Coal. Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988). Thus, the district court did not err in granting summary judgment against McCray's claim of employment discrimination.[11]

### 3. Retaliation Claim

Finally, McCray challenges the district court's grant of summary judgment on her Title VII retaliation claim. Pursuant to 42 U.S.C. § 2000e-3(a), employers are prohibited from discriminating against employees who have "opposed any practice made unlawful" by Title VII.

"A claim of Title VII retaliation can . . . be proven either by direct evidence or by reliance on the *McDonnell Douglas* framework." *Bekkem*, 915 F.3d at 1267. None of McCray's exhausted claims are based on direct evidence of retaliation. *See Fye v.*

---

[11] Because McCray's failure to create a genuine issue of fact as to the inference of discrimination is dispositive of her claim of disparate treatment, the court declines to address other elements of the prima facie case.

*Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008) (explaining that direct evidence of retaliation is one which is "retaliatory on its face").

To proceed under the *McDonnell Douglas* framework, McCray must show (1) she engaged in protected opposition to discrimination ("protected activity"), (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the materially adverse action. *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014); *see Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025) (holding, subsequent to the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 348 (2024), that a Title VII retaliation claim must establish a "materially adverse" employment action). To satisfy the third element, McCray must show those who acted against her did so "out of a desire to retaliate." *Lindsay*, 88 F.4th at 1327. "As a prerequisite to this showing, [McCray] must first come forward with evidence from which a reasonable factfinder could conclude that those who decided [to take the purportedly adverse employment action] had knowledge of [her] protected activity." *Id.* (quotation omitted).

McCray theorizes Duda subjected her to materially adverse employment actions to retaliate against McCray for expressing concerns about Duda's workplace conduct during the January 24 meeting.[12] She identifies her meeting with Cummings

---

[12] Based on this theory, even among the administratively exhausted employment actions, only discrete acts committed after the January 24 meeting may be considered as the basis for McCray's retaliation claim. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1226 (10th Cir. 2022) ("Because [the plaintiff's]

17

as the protected activity[13] and Duda as the relevant decisionmaker. Among other bases to grant summary judgment, the district court ruled no reasonable juror could find Duda knew of the protected activity.

Disputing this determination, McCray presents circumstances which she claims are sufficient to create a genuine question of fact concerning Duda's knowledge. First, McCray points to purported inconsistencies in Cummings's testimony. She notes how Cummings had, in a sworn declaration, denied meeting with McCray on January 24 to discuss workplace discrimination, despite email evidence confirming otherwise. McCray suggests that, because Cummings was untruthful about the nature of this meeting, there is reason to doubt his testimony that he did not tell Duda about the January 24 meeting. Second, McCray alludes to the temporal proximity between the January 24 meeting and the purportedly retaliatory conduct. In particular, McCray points out that immediately after her meeting with Cummings, Duda began invading her personal space and threatening her. Finally, McCray points to Duda's use of a particular phrase. Specifically, McCray recalls using the phrase "get out of the weeds" when discussing concerns with Duda's management style during the January 24 meeting. McCray claims that Duda, at some

protected activity occurred after [the purported adverse employment action], [the plaintiff] cannot maintain her retaliation claim . . . .").

[13] The court assumes without deciding that McCray engaged in a protected activity under Title VII during her meeting with Cummings on January 24, 2020. *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (drawing "all reasonable inferences" from the factual record "in the light most favorable to the nonmoving party").

18

point after the January 24 meeting, told her to get out of the weeds. According to McCray, Duda's use of this particular phrase suggests Duda knew about the protected activity.

None of these lines of argument is persuasive. To be sure, Cummings's sworn statements in which he denied telling Duda about the protected activity "is not dispositive at the summary-judgment stage." *Lindsay*, 88 F.4th at 1328. Nevertheless, McCray bears the burden of "proving that those who acted against her had knowledge of her protected activity." *Id.* at 1328-29. The purported inconsistency in Cummings's statement says nothing about Duda's knowledge. *See id.* (explaining that evidence which supports "only speculation" and "not a finding" of knowledge is insufficient to create a genuine issue of fact). Above all, this argument, in essence, asks this court to assess Cummings's credibility and question his testimony. Doing so, as McCray herself admits, is inappropriate at the summary judgment phase. *See Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1131 (10th Cir. 2024).

Next, temporal proximity between the protected conduct and the adverse employment action typically supports a finding of retaliatory motive, not necessarily the knowledge of protected activity. *See Singh v. Cordle*, 936 F.3d 1022, 1043-44 (10th Cir. 2019) (explaining that the evidence of temporal proximity between the protected activity and retaliatory conduct "allow[s] the jury to infer a causal connection"). Absent other supporting argument or evidence, McCray cannot

establish a genuine question of fact regarding Duda's knowledge of the protected activity based solely on temporal proximity.

This leaves Duda's use of the phrase "get out of the weeds." As McCray herself explained, this phrase was used during the January 24 meeting to discuss frustrations with Duda's management style. As such, Duda's use of the phrase suggests she suspected (or knew) McCray met with Cummings to discuss issues with managerial style—not racial discrimination. Protected activity, in the context of a retaliation claim, "refers to the plaintiff's protected opposition to discrimination made illegal under Title VII." *Iweha v. Kansas*, 121 F.4th 1208, 1233 (10th Cir. 2024) (quotation omitted). "General complaints about . . . management" do not amount to a protected activity. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Thus, Duda's use of the phrase "get out of the weeds" is not evidence which demonstrates her knowledge of a protected activity. Because McCray cannot make the requisite prima facie showing, her retaliation claim cannot survive summary judgment.[14]

---

[14] Because the lack of a genuine issue as to Duda's knowledge of the protected activity is dispositive to McCray's retaliation claim, the court declines to address the remaining elements of its prima facie requirement.

## IV.    CONCLUSION

The judgment of the district court is **AFFIRMED**.

Entered for the Court


Michael R. Murphy
Circuit Judge